**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,**

v.

**UNITED AIR LINES, INC., Defendant.**

**No. 86C4605.**

United States District Court, N.D. Illinois, E.D.

July 15, 1986.

---

Harold A. Katz, Michael E. Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., Michael E. Abram, Cohen, Weiss & Simon, New York City, for plaintiff.

Joel H. Kaplan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Stephen P. Sawyer, United Air Lines, Inc., Elk Grove Tp., Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court is defendant's motion for summary judgment in a labor dispute. For the reasons stated herein, defendant's motion is granted.

## I. FACTS

Plaintiff Air Line Pilots Association ("ALPA") and defendant United Air Lines, Inc. ("United") are parties to two collective bargaining agreements, including a Basic Agreement ("Agreement"), due to expire on October 1, 1988, and an International Supplemental Agreement ("International Supplement") with respect to United's international flying to and within the Pacific Basin. In 1985, United acquired Pan American's Pacific operations. Included in the purchase of these operations were six L–1011s. Prior to this date, United did not have any L–1011s in its fleet.

When United began flying these L–1011s in February 1986, it discovered that these aircraft required maintenance to be performed by a subcontractor in Hong Kong. This maintenance necessitated the scheduling of a daily round trip maintenance ferry flight of L–1011 aircraft from Taipei to Hong Kong. United needs pilots to fly these maintenance ferry flights. Since May 1, 1986, United has flown maintenance ferry flights between Taipei and Hong Kong utilizing line pilots and nonline pilots, including United's engineering pilots and outside pilots.

Prior to utilizing nonline pilots, United and ALPA met twice in April 1986 to discuss the establishment of a temporary domicile ("TDY") in Taipei to conduct this maintenance ferry operation. Under Section 6A of the International Supplement, United was required to seek ALPA's concurrence in order to establish such a temporary domicile, as follows:

> The Company may designate TDY assignments at Tokyo, Osaka, Sydney and Auckland. With mutual concurrence between the Association and the Company, other foreign cities also may be designated.

According to United, its efforts to establish a temporary domicile at Taipei proved unsuccessful when ALPA insisted upon other economic benefits as a trade-off for the Taipei temporary domicile. Subsequently, United has not established a temporary domicile in Taipei. Beginning May 24, 1986, United assigned test pilots to ferry the Taipei-Hong Kong flights. On June 12, 1986, United contracted out this work to an outside contract supplier of pilots. On June 6, 1986, ALPA advised United that it regarded the use of nonline pilots in the Taipei-Hong Kong operation as a violation of the scope provisions of the Agreement.

## II. DISCUSSION

ALPA contends that the assignment of the ferry flights to nonline pilots violates various provisions of the collective bargaining agreement, including the scope clause, the recognition clause, and the crew complement clause. United counters that both the scope and recognition clauses contain exception language which permits nonline pilots to perform certain flying. United asserts that maintenance ferry flying has historically been performed by nonline pilots. Finally, United argues that both the agreement and the parties' past practice draw a distinction between commercial flight operations and other flying, the latter not being included within the agreement.

Both parties agree that this action revolves around the issue of whether this dispute is a major or minor one under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* (RLA). Although the line between major

and minor disputes is imprecise, *see Local 553, Transport Workers Union of America v. Eastern Airlines, Inc.*, 695 F.2d 668, 673 (2d Cir.1983), whether a controversy is labeled major or minor leads to quite different procedural results. If a controversy is major, a union may strike in support of its position if after negotiation, mediation, and possible presidential intervention, the parties are unable to settle their dispute. If a controversy is minor, the parties must submit the dispute to the System Board of Adjustment if negotiations fail. *Local 553*, 695 F.2d at 675; *International Brotherhood of Teamsters v. Pan American World Airways*, 607 F.Supp. 609, 613 (E.D. N.Y.1985).

The Supreme Court has defined what constitutes a major or a minor dispute:

> The first relates to disputes over the formation of collective agreements and efforts to secure them. They arise when there is no agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
>
> The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective bargaining agreement, e.g., claims on account of personal injuries. In either case, the claim is to rights accrued, not merely to have new ones created for the future.

*Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1944).

Thus, the test is whether the conflict can be resolved by reference to an existing agreement. *Atchison, Topeka & Santa Fe Ry. v. United Transportation Union*, 734 F.2d 317, 321 (7th Cir.1984). Where the parties disagree as to whether the existing contract permits the carrier's actions, the dispute is minor unless the carrier's claims of contractual justification are "frivolous" or "obviously insubstantial." *Id.* Such a test is necessary to protect the jurisdiction of the appropriate arbitration board and to promote the purposes of the RLA. *See generally Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

Applying these tests, the Court finds it clear that ALPA's claim in this case is a minor dispute. This dispute arose out of United's use of nonline pilots, i.e., nonunion pilots, to fly L–1011s from Taipei to Hong Kong for maintenance and then back to Taipei. The key question is whether the use of such pilots for these maintenance ferry flights is permitted under the applicable collective bargaining agreements.

ALPA argues that the recognition clause of the Agreement, Section 1, covers only flying for engineering purposes and does not cover flying for maintenance purposes. ALPA asserts that United's own stated test pilot practices support ALPA's argument that Section 1 contemplates only the types of flying that could be performed by United's actual group of test pilots. Finally, ALPA points out that United employs only six test pilots who, according to United's own job description, normally perform diagnostic or maintenance verification operations "for peculiar or difficult aircraft problems" or who "ferry engine inoperative or damaged airplanes." Since United admits that its own test pilots cannot adequately staff these maintenance ferry flights, ALPA concludes that United is attempting to effect a material change in the Agreement by contracting out these maintenance ferry flights to nonline pilots and therefore this dispute involves a major dispute under the RLA.

ALPA's arguments prove that, within the context of the Taipei-Hong Kong ferry flights, this dispute involves the interpretation of what is "flying normally performed by the Company's engineering pilots," as contained in Section 1 of the Agreement. If United's interpretation of Section 1 is not frivolous or obviously insubstantial, then this dispute over interpretation of the collective bargaining agreement is a minor one. Section 1 of the Agreement states in pertinent part:

> The Company recognizes the right of pilots on the Pilots' System Seniority List and/or Second Officer Eligibility Seniority List to perform the Company's flying and operate the Company's aircraft (excepting from the above flying normally performed by the Company's engineering pilots).

ALPA argues that "flying normally performed by the Company's engineering pilots" does not include maintenance ferry flights, because Section 1 does not mention maintenance flights and United's past practices do not support the use of nonline pilots to conduct maintenance ferry flights. United argues that, since Section 1 is silent as to maintenance ferry flights, those flights could arguably be the type of flying normally done by United's engineering pilots. In addition, United points to its job description for Flight Test Captain, which includes "duties as assigned such as ferrying engine inoperative and damaged airplanes."

The Court need not resolve this dispute over whether maintenance ferry flights between Taipei and Hong Kong is the type of flying normally done by United's engineering pilots and therefore is excluded from United's collective bargaining agreement with ALPA. It is enough that the Court find that United's use of nonline pilots to conduct the Taipei-Hong Kong maintenance ferry flights rests on an interpretation of the collective bargaining agreement which is not frivolous or obviously insubstantial. Therefore, since this dispute involves a matter of interpreting the collective bar-

gaining agreement, it is a minor dispute within the meaning of the RLA.

Since this is a minor dispute under the RLA, the System Board of Adjustment has exclusive jurisdiction over this dispute. Accordingly, since it lacks jurisdiction over this dispute, the Court grants defendant's motion for summary judgment, and dismisses plaintiff's action, including its application for injunctive relief.

The Court's ruling is subject to one limitation: United may not argue from this ruling that the stop-gap measure of using nonline pilots in the Taipei-Hong Kong maintenance ferry flights is supported by its past practices or that, in future disputes, this ruling certifies the use of nonline pilots in maintenance ferry flights as a past practice under the collective bargaining agreement. If the System Board of Adjustment so finds, United may obviously so argue. But United may not do so from this ruling.

### III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted and plaintiff's action is dismissed.

IT IS SO ORDERED.