**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,**

v.

**UNITED AIR LINES, INC., Defendant.**

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, John H. Grueser, Jerald H. Beaty, John V. Biggers, and Steven E. Algorri, Plaintiffs,**

v.

**UNITED AIR LINES, INC., Defendant.**

**Nos. 85 C 4765, 86 C 4208.**

United States District Court,
N.D. Illinois, E.D.

Aug. 20, 1986.

---

Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., Michael E. Abram, Cohen, Weiss & Simon, New York City, for plaintiff.

Joel H. Kaplan, Gary S. Kaplan, Brenda D. Hofman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Stephen P. Sawyer, Robert P. Casey, United Air Lines, Inc., Elk Grove Tp., Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court are plaintiff's motion to hold defendant in contempt and defendant's motion for summary judgment in a related case. For the reasons stated herein, defendant's motion is granted and plaintiff's motion is denied. Accordingly, the related case, No. 86 C 4208, is dismissed for lack of jurisdiction.

## I. FACTS

Plaintiff, Air Line Pilots Association, International (ALPA), brought this Motion to Hold Defendant in Contempt of this Court's injunction issued on August 1, 1985. On that date, the Court entered an order which held that defendant United Air Lines, Inc. (United) had violated various provisions of the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, by denying employment to a group of some 500 pilots based on their participation in the 1985 pilot strike. The Court's order reads in pertinent part:

5. Defendant, its officers, agents and employees are hereby:

(a) directed and enjoined to restore the "Group of 500" pilots who elected to respect ALPA picket lines to the status of employees, and to assign them immediately to line pilot service if they completed their training, and otherwise permit them to complete their training without discrimination, and then enter line service, with seniority in all cases accrued from May 17, 1985; ...

*Air Line Pilots Association International v. United Air Lines, Inc.,* 614 F.Supp. 1020, 1051 (N.D.Ill.1985).

On August 5, 1985, the Court amended its order to include the Class of '79 in its order, permit United to place the pilots on inactive status, and recall them after United had completed training pilots it had hired during the strike. United com-

menced its recall of the Group of 500 and Class of '79 in November 1985.

In support of its motion for contempt, ALPA alleges that United has fired five former striking pilots under circumstances which clearly indicate contempt of this Court's order. In each instance, ALPA alleges that United applied its rules and procedures in a discriminatory manner to discharge former striking pilots. ALPA asserts that United held these former striking pilots to higher standards than normally would have been applied and denied them opportunities to which they would have been entitled had they not joined the strike or had there been no strike.

United counters that this Court does not have jurisdiction to hear the dispute over the five alleged discriminatory discharges. United asserts that the alleged discriminatory discharges or reprisals are covered by Paragraph 14 of the "Back-to-Work" Agreement, which arose out of the 1985 strike. The Back-to-Work Agreement was collectively bargained for by United and ALPA and was specifically made part of the current 1985 collective bargaining agreement. Paragraph 14 of the Back-to-Work Agreement states in pertinent part:

> The Association and the Company agree that neither will engage in or condone any activities which might constitute reprisals or recriminations as a result of the ALPA strike. The Company will withdraw all Letters of Charge and all disciplinary actions taken against pilots for strike-related activities and will not take any further action against ALPA or pilots for strike-related activities. ALPA agrees not to level fines or take other disciplinary action against nonstriking pilots. ALPA's claims regarding the "500" pilots, system rebid and salaries for pilots hired as "fleet qualified" will continue to be pursued by ALPA in Federal Court.

United argues that the five claims of alleged strike-related discrimination are "minor" disputes under the RLA because they necessarily involve the interpretation of Paragraph 14 of the Back-to-Work

Agreement. United contends that the acts alleged in ALPA's motion for contempt are virtually indistinguishable from the conduct prohibited by Paragraph 14. In support of its argument, United points out that ALPA has filed four grievances on behalf of three of the discharged pilots in which ALPA alleges a violation of Paragraph 14. Finally, United concludes that, since these discharges are minor disputes, they come within the exclusive jurisdiction of the System Board of Adjustment under the RLA.

In addition to the minor dispute issue, the parties argue over whether a contempt sanction is proper and whether United has complied, substantially or completely, with this Court's order. The related case, No. 86 C 4208, seeks the same relief as sought in this case.

## II. DISCUSSION

█ In determining whether the Court has jurisdiction to hear plaintiff's contempt motion, the key issue is whether this case presents a minor or major dispute under the Railway Labor Act (RLA). Although the line between major and minor disputes is imprecise, *see Local 553, Transport Workers Union of America v. Eastern Airlines, Inc.*, 695 F.2d 668, 673 (2d Cir. 1983), whether a controversy is labelled major or minor leads to quite different procedural results. If a controversy is major, a union may strike in support of its position if after negotiation, mediation and possible presidential intervention, the parties are unable to settle their dispute. If a controversy is minor, the parties must submit the dispute to the System Board of Adjustment if negotiations fail. *Local 553*, 695 F.2d at 675; *International Brotherhood of Teamsters v. Pan American World Airways*, 607 F.Supp. 609, 613 (E.D. N.Y.1985). Recently, this Court has considered the major/minor dispute issue. *Air Line Pilots Association, International v. United Air Lines, Inc.*, 637 F.Supp. 215 (N.D.Ill.1986); *Burlington Northern Railroad Company v. Sheet Metal Workers' International Association*, 636 F.Supp. 809 (N.D.Ill.1986).

The Supreme Court has defined what constitutes a major or a minor dispute:

The first relates to disputes over the formation of collective agreements and efforts to secure them. They arise when there is no agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to the assertion of rights claimed to have vested in the past.

The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case.

*Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1944).

Thus, the test is whether the conflict can be resolved by reference to an existing agreement. *Atchison, Topeka & Santa Fe Ry. v. United Transportation Union,* 734 F.2d 317, 321 (7th Cir.1984). Where the parties disagree as to whether the existing contract permits the carrier's actions, the dispute is minor unless the carrier's claims of contractual justification are "frivolous" or "obviously insubstantial." *Id.* Such a test is necessary to protect the jurisdiction of the appropriate arbitration board and to promote the purposes of the RLA. *See generally Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

Applying these tests to the present case, the Court finds it clear that ALPA's claim based on the five discharges is a minor dispute. This dispute arose out of United's alleged application of higher standards to discharge the five former striking pilots. The key question is whether such an alleged reprisal against striking pilots falls within either Paragraph 14 of the Back-to-Work Agreement or this Court's August 1, 1985 order.

Paragraph 14 of the Back-to-Work Agreement clearly prohibits "reprisals or recriminations as a result of the ALPA strike." However, Paragraph 14 also reserves ALPA's rights to pursue "claims regarding the '500' pilots." Therefore, the Group of 500 and Class of '79 pilots could arguably be excluded from the scope of Paragraph 14. While reserving its rights under this Court's order, ALPA apparently concedes the possibility that Paragraph 14 applies to these discharges in the four grievances it filed alleging violations of Paragraph 14.

Both sides' arguments prove that this dispute involves the interpretation of the scope of Paragraph 14 of the Back-to-Work Agreement, as well as an examination of the five discharges to determine if they were reprisals. The Court need not resolve this dispute over the interpretation of Paragraph 14 and whether these discharges violate it. It is enough that the Court find that United's argument regarding the application of Paragraph 14 rests on an interpretation of that paragraph, as incorporated into the existing collective bargaining agreement, which is not frivolous or obviously insubstantial. *Air Line Pilots Association, International v. United Air Lines, Inc.,* 637 F.Supp. 215 (N.D.Ill.1986). Therefore, since this dispute involves a matter of interpreting the collective bargaining agreement, it is a minor dispute within the meaning of the RLA. *Id.*

Even if the Court has no jurisdiction under its August 1, 1985 order, ALPA argues that the Court has jurisdiction based on violations of specific provisions of the RLA. *See generally Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 918 (7th Cir. 1974). In *Conrad,* an airline pilot sought back pay and reinstatement and alleged that he was discharged on account of his union activity. A manager's report and evaluation of the pilot clearly evidenced the anti-union motivation of the discharge. The Seventh Circuit Court of Appeals held that the pilot stated an arguable claim of a

violation of 45 U.S.C. § 152, Fourth. Section 152 prohibits an employer from denying or interfering with an employee's right to join a union of his choice. The Seventh Circuit held that a claim which rests upon a violation of Section 152 is not committed to the exclusive jurisdiction of the adjustment board, but is within the district court's jurisdiction. *Conrad*, 494 F.2d at 918.

The Court holds that *Conrad* is distinguishable from the present case. Unlike this case, *Conrad* involved a specific allegation of anti-union animus or motivation in reference to the pilot who was discharged. Moreover, *Conrad* did not involve the effectuation of a post-strike remedy or the existence of a Back-to-Work Agreement. In this case, ALPA points to certain hostile comments allegedly made by United officials as support for the alleged anti-union animus or motivation against former striking pilots in general. In addition, Paragraph 14 of the Back-to-Work Agreement appears to be the specified post-strike remedy for redressing reprisals against former striking pilots. Therefore, in light of the different factual postures of *Conrad* and this case, the Court finds that the *Conrad* holding regarding jurisdiction over alleged violations of 45 U.S.C. § 152, Fourth, is limited to the facts in that case.

Two cases with greater factual similarity to this case persuade this Court that deferral to the System Board of Adjustment regarding this dispute is the proper result. *International Brotherhood of Teamsters v. Pan American World Airways, Inc.*, 607 F.Supp. 609 (E.D.N.Y.1985); *Local Union 808, International Brotherhood of Teamsters v. P & W Railroad Company*, 576 F.Supp. 693 (D.Conn.1983). In *Teamsters v. Pan Am*, the union alleged that Pan Am violated Section 152, Fourth by failing to recall employees on the basis of established seniority, furlough and recall procedures following a sympathy strike by the union. The union alleged that Pan Am's failure to follow seniority, furlough and recall procedures was done for the purpose of punishing employees who engaged in the strike and for the purpose of disparaging the employees' representative.

The union also pointed to certain hostile comments allegedly made by Pan Am officials, as well as to alleged incidents of harassment of employees and their representatives.

In expressing doubt regarding its jurisdiction over the alleged violations of Section 152, Fourth, the district court in *Teamsters v. Pan Am* held that:

> It is clear, however, that the primary acts complained of, i.e., the retention or recall of certain employees to the exclusion of other, more senior, employees, lie at the very heart of the contractual interpretation dispute to be referred to the Adjustment Board. [ ] It is therefore, doubtful that this Court has the jurisdiction to issue the relief requested. [Citations omitted.]

607 F.Supp. at 614. In the present case, as in *Teamsters v. Pan Am*, the allegations of punishment of former striking pilots in violation of Section 152, Fourth, go to the heart of Paragraph 14 of the Back-to-Work Agreement, which has been referred to the Adjustment Board.

Finally, in *Local Union 808*, the union argued that its members were disciplined because of their union membership and that the justification offered by defendant P & W was pretextual. Assuming the union's allegations were true, the district court in *Local Union 808* held that:

> In light of its familiarity with contractual grievances and its expertise in ruling on the validity of the carrier's actions under the collective bargaining agreement, there is no reason to believe that the railroad adjustment board could not adequately address and resolve a claim of pretextual discipline motivated by anti-union animus.

576 F.Supp. at 703. The district court in *Local Union 808* specifically recognized the *Conrad* holding but found it unpersuasive in light of recent decisions by the Second and Third Circuits advising judicial restraint in this area. *International Association of Machinists v. Northwest Airlines, Inc.*, 673 F.2d 700 (3d Cir.1982); *Air-*

*line Pilots Association, Inc. v. Texas International Airlines, Inc.*, 656 F.2d 16 (2d Cir.1981).

The Court finds the reasoning and result in *Teamsters v. Pan Am* and *Local Union 808* to be persuasive in this case. Therefore, the Court will defer to the System Board of Adjustment regarding ALPA's allegations of anti-union animus and motivation against former striking pilots in violation of Section 152, Fourth, of the RLA. Since the Court has already found that this dispute also involves a minor dispute under the RLA, the System Board of Adjustment has exclusive jurisdiction over this dispute. Accordingly, since it lacks jurisdiction over this dispute, the Court grants defendant's motion for summary judgment in the related case, No. 86 C 4208, and denies plaintiff's motion for contempt in this case.

### III. CONCLUSION

For the reasons stated above, plaintiff's motion to hold defendant in contempt is denied. Defendant's motion for summary judgment in the related case, No. 86 C 4208, is granted and that case is dismissed.

IT IS SO ORDERED.