The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,
Plaintiff-Appellee,

and

Brotherhood of Locomotive Engineers,
Plaintiff-Intervenor,

v.

The UNITED TRANSPORTATION UN-
ION, et al., Defendants-Appellants.

No. 83–1974.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1984.

Decided May 15, 1984.

Rehearing Denied June 18, 1984.

John J. Naughton, Henslee, Monek & Henslee, Chicago, Ill., for defendants-appellants.

Ronald A. Lane, Law Dept., Santa Fe Industries, Inc., Chicago, Ill., for plaintiff-appellee.

Before BAUER, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This appeal is from a permanent injunction entered by the district court, which prohibited the United Transportation Union (UTU) from striking against the Atchison, Topeka and Santa Fe Railway Company (Santa Fe) in support of its claim that an agreement between the Santa Fe and the Brotherhood of Locomotive Engineers (BLE) violated existing agreements between the Santa Fe and the UTU. The district court entered the permanent injunction on a motion for summary judgment. The district court found that the dispute between the Santa Fe and the UTU was a "minor" dispute under the Railway Labor Act, 45 U.S.C. §§ 151–163 (1976), and that therefore the threatened strike would be unlawful. This appeal raises two issues: whether the district court properly acted through summary judgment, and whether the dispute was minor. For the reasons stated below, we affirm the judgment of the district court.

I

Appellant UTU is the certified collective bargaining representative of Santa Fe firemen. Intervenor-appellee BLE is the certified collective bargaining representative of Santa Fe engineers. Typically, engine service employees begin employment as firemen. After receiving training and testing, they are promoted to engineers. Upon promotion, they retain their seniority as firemen and may exercise seniority on either firemen or engineer assignments. An employee may be a member of either the UTU or the BLE. When working as a fireman, he works under a collective bargaining agreement negotiated by the UTU; when working as an engineer, he works under a collective bargaining agreement negotiated by the BLE.

In 1972, the Santa Fe and the BLE entered into a collective bargaining agreement in which they agreed to negotiate concerning the eventual elimination of Chicago as a home terminal for engineers in unassigned freight pool service. The UTU did not make a similar commitment with respect to firemen.

In 1977, the Santa Fe held a joint meeting with representatives of the UTU and the BLE to discuss eliminating Chicago as a home terminal for engine crews in unassigned freight pool service. Both unions rejected the Santa Fe's joint proposal. The Santa Fe attempted to arrange a second joint meeting to be held in 1978, but neither union wanted to participate in a joint meeting. Separate negotiations were therefore held. The Santa Fe then presented substantially identical proposals to each union. The UTU responded to the proposal with a counterproposal that the Santa Fe considered unacceptable.

From 1979 through 1981, the Santa Fe continued to negotiate with the BLE. On February 3, 1981, the UTU wrote to the Santa Fe protesting attempts by the BLE to negotiate agreements. The UTU stated opposition to any attempt to establish engineers' seniority in any seniority district where those employees did not have firemen seniority. The Santa Fe did not respond.

In February 1982 the Santa Fe and the BLE reached an agreement. The agreement changed the home terminal of engineers in unassigned freight pool service. It also expanded the seniority district of Chicago terminal yard engineers. The Illinois division road engineers were given an opportunity to obtain yard seniority, and yard engineers were given an opportunity to obtain road seniority.

In April 1982 the UTU sent a letter to the Santa Fe protesting the BLE agreement. The UTU complained that the BLE agreement violated existing agreements be-

tween the UTU and the Santa Fe. The Santa Fe responded by saying that the BLE agreement did not apply to firemen and by expressing willingness to sign a similar agreement concerning firemen with the UTU. In June 1982 the UTU wrote a letter of protest.

On July 7, 1982, the UTU sent a telegram threatening to strike beginning on July 9. On July 9, representatives of the UTU and the Santa Fe conferred by telephone. On the morning of July 9, the district court, after hearing argument from both the Santa Fe and the UTU, entered a temporary restraining order prohibiting the UTU from striking until after a hearing on the Santa Fe's request for a preliminary injunction.

On July 12, the court held a hearing on the preliminary injunction. A recess was taken so that the parties could attempt to settle the dispute. No settlement was reached. On July 13, the court entered a preliminary injunction, prohibiting the UTU from striking. After the hearing, the BLE was granted leave to intervene as a plaintiff.

In January 1983, the Santa Fe moved for summary judgment, including the entry of a permanent injunction. In March 1983 the UTU responded. At that time neither party had submitted the dispute to the National Railroad Adjustment Board for arbitration. The Santa Fe submitted the dispute for arbitration on April 14, 1983.

On April 27, 1983, the district court entered a permanent injunction and final judgment. The court found that the UTU had not raised any genuine issue of material fact and that the case could be disposed of by summary judgment and consolidation of the preliminary and permanent injunction hearings. The court held that the issue was a minor dispute, and thus a strike would be unlawful and must be enjoined pursuant to the Railway Labor Act. The court found that the damage caused by a strike would be immediate, substantial, and

irreparable, and that the balance of the equities was in the Santa Fe's favor. Finally, the court held that the injunction "is consistent with the public interest, necessary to effectuate the procedures of the Railway Labor Act and not barred by the Norris-LaGuardia Act." Findings of Fact and Conclusions of Law at 8.

On appeal, the UTU raises two issues. It contends that the district court erred in granting summary judgment because there were genuine issues of material fact and the district court's findings were clearly erroneous. It argues that the district court ignored its defenses, namely, the failure to comply with section 2 First and section 2 Seventh of the Railway Labor Act and with section 8 of the Norris-LaGuardia Act. The UTU also argues that the district court erred in finding that the dispute was "minor" within the meaning of the Railway Labor Act. The UTU offers three reasons. First, it argues that the question that the Santa Fe submitted to the National Railroad Adjustment Board for arbitration cannot settle all the issues between the parties. Second, the UTU contends that a minor dispute involves only one employee, whereas its dispute with the Santa Fe involves more than the one employee. Finally, the UTU argues that the Santa Fe-BLE agreement directly conflicts with existing Santa Fe-UTU agreements.[1] The UTU asks that the case be remanded for an evidentiary hearing.

The Santa Fe and the BLE argue that the district court correctly found that the dispute was minor because this was a dispute involving the interpretation or application of existing agreements. The Santa Fe argues that the UTU's defenses are without merit. Finally, the Santa Fe maintains that summary judgment was proper because the UTU has not shown any dispute of fact.

## II

■ We may dispose briefly of the UTU's contention that summary judgment

---

1. The existing agreements include the collective bargaining agreement, a previous arbitration award, and a Tri-Partite agreement.

was improper. Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56. On appeal, the UTU has not pointed to a single fact that is in dispute. The burden of showing the lack of an issue of fact is, of course, on the party moving for summary judgment—here, the Santa Fe—but the opposing party may not avoid summary judgment by baldly asserting the existence of a disputed question of fact. *Korf v. Ball State University,* 726 F.2d 1222, 1228 (7th Cir.1983); *Posey v. Skyline Corp.,* 702 F.2d 102, 104 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).[2]

■ We turn to the issue of whether the case presents a "minor" dispute or a "major" dispute under the Railway Labor Act. Although the line between major and minor disputes is imprecise, *see Local 553, Transport Workers Union of America v. Eastern Airlines, Inc.,* 695 F.2d 668, 673 (2d Cir.1983), whether a controversy is labelled major or minor leads to quite different procedural results. If a controversy is major, a union may strike in support of its position if after negotiation, mediation, and possible presidential intervention, the parties are unable to settle their dispute. If a controversy is minor, the parties must submit the dispute to the National Railroad Adjustment Board (NRAB) if negotiations fail. *See Chicago and Northwestern Transportation Co. v. United Transportation Union,* 656 F.2d 274, 277 (7th Cir. 1981). The NRAB has exclusive jurisdiction over minor disputes. *Andrews v. Louisville & Nashville Railway Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95

(1972). In a minor dispute, a district court may enjoin a strike to protect the jurisdiction of the NRAB. *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co.,* 353 U.S. 30, 41–42, 77 S.Ct. 635, 640–641, 1 L.Ed.2d 622 (1957). This court has upheld the issuance of injunctions against threatened strikes over minor disputes. *See, e.g., Chicago and Northwestern Transportation Co. v. United Transportation Union,* 656 F.2d at 279.

■ The Supreme Court has defined what constitutes a major or a minor dispute: .

> The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
>
> The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of

---

2. Where, as here, the district court adopts the findings of fact of the prevailing party as its own, the court exercises a more critical review of the findings. *See SEC v. Suter,* 732 F.2d 1294 at 1300 (7th Cir.1984). Although the findings of fact in this case could have been more complete, after carefully reviewing the record we cannot find error in those findings. The UTU's argument that the findings were "clearly erroneous" is merely a reiteration of its argument, which we have already rejected, that there was a genuine issue of material fact, since if there were a genuine question as to the correctness of the findings, there would be a disputed fact and summary judgment would be inappropriate.

The UTU complains that the district court failed to consider its defenses. The district court, however, expressly rejected the defense based on section 8 of the Norris-LaGuardia Act. Findings of Fact and Conclusions of Law at 8. The court also rejected the defense based on section 2 Seventh of the Railway Labor Act in concluding that the Santa Fe-BLE agreement did not apply to firemen. *Id.* at 7. Although the court did not expressly reject the defense based on section 2 First of the Railway Labor Act, the court did make some findings and the record is adequate to support a conclusion that the defense is without merit.

personal injuries. In either case, the claim is to rights accrued, not merely to have new ones created for the future. *Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1944); *see Chicago and Northwestern Transportation Co. v. United Transportation Union*, 656 F.2d at 277–78. Thus, the test is whether the conflict can be resolved by reference to an existing agreement. *Id.* at 277. Where the parties disagree as to whether the existing contract permits the carrier's actions, the dispute is minor unless the carrier's claims of contractual justification are " 'frivolous' or 'obviously insubstantial.' " *Id.* at 279; *see also Air Line Pilots Association, International v. TWA*, 713 F.2d 940, 948 (2d Cir.1983). Such a test is necessary to protect the jurisdiction of the NRAB and to promote the purposes of the Railway Labor Act. *See generally Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

 Applying these tests, we find it clear that the UTU's claim in this case is a minor dispute. The UTU's claims depend upon an interpretation of its rights under its existing agreements with the Santa Fe.[3] We cannot say that the Santa Fe's argument that its agreement with the BLE does not infringe on rights guaranteed by its agreements with the UTU is frivolous or insubstantial. Moreover, the NRAB does have jurisdiction in this case to issue a final decision involving the rights of all parties. *See Transportation-Communication Employees Union v. Union Pacific Railroad Co.*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); *Brotherhood of Locomotive Firemen and Enginemen v. Southern Pacific Co.*, 447 F.2d 1127 (5th Cir.1971). This court clearly has rejected the theory that a minor dispute is one involving only one employee. *Chicago and Northwestern*

*Transportation Co. v. United Transportation Union*, 656 F.2d 274 (7th Cir.1981). Thus, this case presents a minor dispute and the strike injunction was proper.

The UTU has raised a number of other arguments, which we determine to be without merit.

AFFIRMED.

---

3. The UTU has stated that its position in this case is that the Santa Fe-BLE agreement violates its rights under existing agreements:

> The evidence clearly establishes that the UTU's position is based not upon jurisdiction, but upon infringement of specific agreements

held by the UTU as well as upon the infringement of the Seidenberg Award construing the BLE agreement.
Brief of United Transportation Union Opposing Motion for Summary Judgment at 8–9.