**BURLINGTON NORTHERN RAILROAD COMPANY,**
Plaintiff,

v.

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, et al., Defendants.**

**No. 86 C 3893.**

United States District Court,
N.D. Illinois, E.D.

June 11, 1986.

Richard J. Schreiber, Thomas J. Knapp, Burlington Northern Railroad Company, Fort Worth, Tex., Kenneth J. Wysoglad, Burlington Northern Railroad Company, Naperville, Ill., for plaintiff.

John O'B. Clarke, Jr., William J. Birney, Highsaw & Mahoney, P.C., Washington, D.C., Solomon I. Hirsh, Law Office of Solomon I. Hirsh, Chicago, Ill., Judy Rivlin, Sheet Metal Workers' Intern. Ass'n, Washington, D.C., for defendants.

### ORDER

BUA, District Judge.

Before the Court are the parties' applications for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a). Pursuant to Fed.R.Civ.P. 65(a)(2), this Court orders the trial of the action on the merits to be advanced and consolidated with the hearing of the application. For the reasons stated herein, the Court grants plaintiff's application and denies defendants' application. Accordingly, the Court enters a permanent injunction in plaintiff's favor consistent with the specific relief set forth below.

### I. FACTS

This dispute arises out of work assignments for sheet metal workers at Burlington Northern Railroad's (BN) terminal in Tulsa, Oklahoma. The defendants are collectively known as the Sheet Metal Workers International Association (SMWIA). There are five sheet metal workers on the terminal roster, and a sheet metal worker regularly works on each of the three shifts at the terminal. The sheet metal workers perform sheet metal and pipefitting work, which includes connecting and disconnecting air hoses on trains that are being assembled at the terminal. On May 28, 1986, one of the sheet metal workers at the terminal went on a previously scheduled, one-week vacation. On May 29, 1986, a second sheet metal worker who had been injured on the job took sick leave in order to undergo surgery related to his injury.

Since there were no replacements for these two sheet metal workers, BN "blanked" their positions. Under the Supplemental Sickness Benefit Agreement of March 29, 1979 and the Vacation Agreement of December 14, 1941, BN is not required to fill a vacancy which occurs as a result of an employee's vacation or disability.

On May 29, 1986, during discussions with the SMWIA concerning performance of work at the Tulsa terminal, BN disclosed that the fifth sheet metal worker on the terminal roster had taken another job while on furlough and had declined to return to Tulsa to temporarily fill one of the two vacant sheet metal worker positions. BN rejected SMWIA's suggestion that furloughed sheet metal workers from other regions be transferred to Tulsa to perform the work. BN agreed to defer the work of the sheet metal workers to the following shift when a sheet metal worker would be available to perform it or, in an emergency, to have a sheet metal worker perform the work on overtime. (Transcript of Preliminary Injunction Hearing, June 5, 1986, p. 26.)

According to the testimony of Michael A. Marshall, Assistant Directing General Chairman, United States District Council of Railroads, SMWIA, on May 30, 1986, he learned that BN was assigning certain work on locomotives to a supervisor and an electrician. The SMWIA felt that this assignment of work to other crafts was improper and in violation of Rule 94 of the applicable collective bargaining agreement, the Frisco Agreement. Shortly thereafter, the SMWIA began contacting its local unions in order to give them strike instructions.

On May 30, 1986, BN brought this action alleging that the SMWIA had unlawfully threatened to strike BN in violation of the Railway Labor Act, 45 U.S.C. § 151, *et seq.* (RLA). Also on May 30, BN sent a "Notice of Intent to File a Claim" with the Second Division of the National Railroad Adjustment Board (NRAB) seeking to resolve this dispute. Following a hearing on May 30,

the Honorable Frank J. McGarr granted BN's request for a temporary restraining order and issued an order enjoining SMWIA from striking or picketing BN. The order expired at 5:00 p.m. on June 9, 1986. This Court held a hearing on both sides' applications for a preliminary injunction on June 5, 1986. On June 6, this Court ruled orally, granting BN's preliminary injunction and denying SMWIA's. This written order follows the Court's oral ruling.

## II. DISCUSSION

At the June 5 hearing, this Court advised the parties on two occasions that it would consider advancing the preliminary injunction hearing to a trial on the merits, pursuant to Fed.R.Civ.P. 65(a)(2). On the first occasion, SMWIA's attorney hesitated in responding to the Court's suggestion because he stated that he might wish to produce arbitration awards favorable to the SMWIA to counter the awards submitted by BN. At that time, the Court reserved ruling on advancing to a trial on the merits. (Tr. 2–3.)

On the second occasion, SMWIA's attorney respectfully requested that the Court not consolidate the preliminary injunction hearing with a trial on the merits. His request was based on the possibility that evidence which related to the dispute was not available due to the shortness of time prior to the hearing. (Tr. 17–18.) The Court noted that, pursuant to Rule 65(a)(2), it could advance the hearing to a trial on the merits at the close of the evidence if neither party was prejudiced thereby. (Tr. 18.)

Under Rule 65(a)(2), before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Rule 65(a)(2) shall be construed and applied in order to save the parties any rights included in a jury trial. The present case is a nonjury case. In addition, the parties were notified of the Court's intention to advance

the hearing to a trial on the merits at the beginning and in the middle of the hearing.

Therefore, the Court must determine whether either party will be prejudiced by advancing this action to a trial on the merits. Since BN did not object to such advancement, there is no prejudice to BN. The basis for SMWIA's objection is the possibility that some evidence might not be available due to shortness of time. However, the parties had almost one week to prepare on an expedited basis for the preliminary injunction hearing. In addition, the issue here is whether this dispute over temporary work assignment is a major or minor dispute under the RLA. The resolution of this issue hinges upon whether BN's actions reflect a material change of the applicable collective bargaining agreement or merely an arguable interpretation of the agreement. In light of this limited issue of interpreting BN's actions in reference to the collective bargaining agreement, the Court finds that no new evidence could be produced to aid it in resolving this action. Therefore, the SMWIA will not be prejudiced and repetition of evidence will be avoided by advancing the action to a trial on the merits.

### A. Major/Minor Dispute Distinction Under the RLA

■ Both parties agree that this action revolves around the issue of whether this dispute is a major or minor one under the RLA. Although the line between major and minor disputes is imprecise, *see Local 553, Transport Workers Union of America v. Eastern Airlines, Inc.*, 695 F.2d 668, 673 (2d Cir.1983), whether a controversy is labeled major or minor leads to quite different procedural results. If a controversy is major, a union may strike in support of its position if after negotiation, mediation, and possible presidential intervention, the parties are unable to settle their dispute. If a controversy is minor, the parties must submit the dispute to the National Railroad Adjustment Board (NRAB) if negotiations fail. *Atchison, Topeka & Santa Fe Ry. v. United Transportation Union*, 734 F.2d 317, 320 (7th Cir.1984); *Chicago and*

*Northwestern Transportation Co. v. United Transportation Union*, 656 F.2d 274, 277 (7th Cir.1981).

The NRAB has exclusive jurisdiction over minor disputes. *Andrews v. Louisville & Nashville Railway Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In a minor dispute, a district court may enjoin a strike to protect the jurisdiction of the NRAB. *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co.*, 353 U.S. 30, 41–42, 77 S.Ct. 635, 640–41, 1 L.Ed.2d 622 (1957). The Seventh Circuit Court of Appeals has upheld the issuance of injunctions against threatened strikes over minor disputes. *Atchison, Topeka & Santa Fe Ry. v. United Transportation Union*, 734 F.2d at 320.

The Supreme Court has defined what constitutes a major or a minor dispute:

> The first relates to disputes over the formation of collective agreements and efforts to secure them. They arise when there is no agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
>
> The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of personal injuries. In either case, the claim is to rights accrued, not merely to have new ones created for the future.

*Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945).

Thus, the test is whether the conflict can be resolved by reference to an existing agreement. *Atchison, Topeka & Santa Fe Ry. v. United Transportation Union,* 734 F.2d at 321. Where the parties disagree as to whether the existing contract permits the carrier's actions, the dispute is minor unless the carrier's claims of contractual justification are "frivolous" or "obviously insubstantial." *Id.* Such a test is necessary to protect the jurisdiction of the NRAB and to promote the purposes of the RLA. *See generally Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

Applying these tests, the Court finds it clear that the SMWIA's claim in this case is a minor dispute. This dispute arose out of a specific situation involving temporary work assignments at BN's Tulsa terminal. The SMWIA claims that assignment of the work done at Tulsa—cutting and adding of locomotives—is exclusive to sheet metal workers and SMWIA members under Rule 94 of the Frisco Agreement. Therefore, assignment of that work to other shopcraft unions violates the exclusivity of the Frisco Agreement. Finally, the SMWIA concludes that BN's actions at Tulsa are part of a larger practice to commingle the work of the various shopcraft unions, constitute a material change in the exclusivity clause of the Frisco Agreement, and therefore give rise to a major dispute under the RLA.

The SMWIA's arguments prove that, within the context of BN's actions at the Tulsa terminal, this dispute involves the interpretation of what is exclusive work under Rule 94 of the Frisco Agreement. If BN's interpretation of Rule 94 is not frivolous or obviously insubstantial, then this dispute over interpretation of the collective bargaining agreement is a minor one. Rule 94 states in pertinent part: "Sheet metal workers' work shall consist of ... the bending, fitting, brazing, connecting and disconnecting of air, water, gas, oil and steam pipes; ... and all other work generally recognized as sheet metal workers' work."

The SMWIA argues that all cutting and adding of locomotives at the Tulsa terminal, and systemwide, involves the connecting and disconnecting of air hoses, which is included in Rule 94. BN argues correctly that Rule 94 does not mention the cutting and adding of locomotives. Finally, BN asserts that, in its past practice, electricians conduct four times more cutting and adding of locomotives than do sheet metal workers.

The Court need not resolve this dispute over whether the cutting and adding of locomotives at the Tulsa terminal, and systemwide, necessarily involves exclusive work as defined in Rule 94. It is enough that the Court find that BN's work assignments at the Tulsa terminal rest on an interpretation of the collective bargaining agreement which is not frivolous or obviously insubstantial. Therefore, since this dispute involves a matter of interpreting the collective bargaining agreement, it is a minor dispute within the meaning of the RLA. Since this is a minor dispute under the RLA, the issuance of a permanent strike injunction is proper.

### III. CONCLUSION

For the reasons stated above, after advancing this action to a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2), the Court enters a permanent injunction restraining and enjoining defendants (SMWIA) and members of defendants' union from picketing or carrying out any strike or work stoppage on the plaintiff's railroad.

IT IS SO ORDERED.