In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2092

BLET GCA UP, CENTRAL REGION, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-1105 — **Ronald A. Guzman**, *Judge*.

ARGUED DECEMBER 1, 2020 — DECIDED FEBRUARY 12, 2021

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In 2020 Union Pacific Railroad announced a change to its employee attendance policy. Several regional branches of the Brotherhood of Locomotive Engineers and Trainmen, the nation's oldest rail labor union, opposed the change and went to federal court seeking an order under the Railway Labor Act requiring Union Pacific to submit the change to collective bargaining. The district court

made short work of the Brotherhood's claim, concluding that binding precedent from the Supreme Court and our court required dismissal for lack of jurisdiction. The Brotherhood's claim, the district court recognized, belonged not in federal court but in arbitration before the National Railroad Adjustment Board. We not only affirm, but also grant Union Pacific's motion for sanctions under Federal Rule of Appellate Procedure 38. For the second time in three years, the Brotherhood has pressed a position squarely foreclosed by settled law. So we once again sanction them for pursuing a frivolous appeal—we hope for the last time.

## I

### A

Union Pacific is one of America's largest freight-hauling railroads. The company employs hundreds of engineers to operate its locomotives as they traverse over 32,000 miles across 23 states. Many Union Pacific engineers are members of the Brotherhood of Locomotive Engineers and Trainmen Union.

Collective bargaining agreements often define the relationship between railroad companies and employees on a range of matters, including working conditions and wages. As a result of many mergers and acquisitions, Union Pacific today is an agglomeration of many railroad lines that were once distinct entities. The company is therefore subject to many different collective bargaining agreements with its employees.

In February 2020 Union Pacific informed the Brotherhood that it had adopted and planned to implement a revised company-wide attendance policy. This modified policy built on previous ones the company unilaterally announced and

imposed and to which the Brotherhood acceded. This pattern dates at least to 1998, when Union Pacific first announced a system-wide attendance policy. The company has modified the policy at least eight times (including the change that instigated this suit) over the ensuing years.

The revised policy assigns points to an employee's absence and authorizes disciplinary action once an employee accumulates a certain number of points in a 90-day period. The Brotherhood opposed the modification and demanded that Union Pacific treat the change as a proposal subject to collective bargaining. When Union Pacific declined the invitation to the negotiating table, the Brotherhood turned to federal court for relief.

The Brotherhood saw the modified attendance policy as so substantial as to require collective bargaining under the Railway Labor Act (RLA). The union therefore asked the district court to enjoin the policy from taking effect pending the outcome of the collective bargaining and mediation prescribed by the RLA. For its part, Union Pacific filed its own lawsuit, seeking a declaration that the company's modified attendance policy was not so major as to require collective bargaining and, moreover, that any dispute over the validity and legality of the new policy had to be resolved by arbitration before the National Railroad Adjustment Board.

The district court granted Union Pacific's motion and dismissed the Brotherhood's claim for lack of jurisdiction because the union's challenge to the revised policy amounted to a so-called "minor dispute" subject to mandatory arbitration under the RLA. Indeed, the district court saw the issue as open and shut, issuing a short three-page order pointing to the Supreme Court's decision in *Consolidated Rail Corp. v.*

*Railway Labor Executives' Ass'n*, 491 U.S. 299 (1989) ("*Conrail*") and our decision in *Railway Labor Executives Ass'n v. Norfolk & Western Railway Co.*, 833 F.2d 700 (7th Cir. 1987) ("*Railway Labor Executives Ass'n 1987*"). Those decisions make plain, the district court reasoned, that the RLA considers any dispute to be minor (and thus subject to arbitration) if a railroad points to existing authority—including authority established by a course of dealing between the parties—to modify the terms or conditions of a workplace policy. In making this showing, the district court emphasized, the railroad need only articulate an interpretation or application of an agreement that is neither obviously insubstantial nor frivolous.

Upon examining the parties' course of dealing over workplace attendance requirements, the district court saw a clear pattern and practice of Union Pacific modifying its policies many times over many years without subjecting changes to collective bargaining. This pattern of dealing, the district court concluded, provided the railroad with a nonfrivolous justification to unilaterally modify its attendance policy. That reality made this dispute a minor one subject to resolution through mandatory arbitration. In dismissing the Brotherhood's claim, the district court also dismissed Union Pacific's companion case.

The Brotherhood now appeals.

## II

### A

As vital as the railroad industry has been to commercial development, it comes as no surprise that it remains one of the most regulated industries in America. Labor relations within the railroad industry are no exception. To guard

against prolonged labor conflict, Congress enacted the Railway Labor Act in 1926. See 45 U.S.C. § 151a. The RLA governs much of the relationship between employees and employers in the railroad industry. Employers have two methods through which they can modify "rates of pay, rules, or working conditions of [] employees." 45 U.S.C. § 152 Seventh. A railroad may act in accordance with any existing agreement or go through the bargaining and negotiation procedures prescribed in the RLA. See *id*.

When disagreements arise over whether a railroad acted pursuant to an existing agreement, the RLA draws a line between two classes of dispute: those that "relate[] to disputes over the formation of collective agreements or efforts to secure them" and those that "contemplate[] the existence of a collective agreement." *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 722–23 (1945). The Supreme Court has clarified this dividing line by adopting a distinction between what it calls "major disputes" and "minor disputes." See *Conrail*, 491 U.S. at 302; see also *Railway Labor Executives Ass'n 1987*, 833 F.2d at 704 (explaining the same distinction).

Do not let the labeling create confusion. Whether a dispute is major or minor in no way relates to a court's estimation of the dispute's relative importance. See *Conrail*, 491 U.S. at 305. The inquiry turns instead on whether a railroad can point to existing authority to justify its action.

A major dispute arises from the creation of new contracts or modifications of existing contracts that affect any of the mandatory subjects of bargaining established in the RLA. See *Conrail*, 491 U.S. at 302–03; see also *Brotherhood of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 879 F.3d 754, 755–56

(7th Cir. 2017) ("*Brotherhood 2017*") (citing *Conrail* and explaining that "[i]f a disagreement arises over the formation or amendment of a collective bargaining agreement (CBA), it is considered a 'major' dispute under the Act, and it must be decided by a court"). Minor disputes, on the other hand, arise from the interpretation or application of existing agreements. See *Conrail*, 491 U.S. at 303; see also *Brotherhood 2017*, 879 F.3d at 756, 758. Put another way, "major disputes seek to create contractual rights, minor disputes to enforce them." *Conrail*, 491 U.S. at 302.

When confronted with a major dispute, a court may use its injunctive authority to maintain the status quo while mediation and bargaining occur. See *Detroit & T.S.L.R. Co. v. United Transp. Union*, 396 U.S. 142 (1969) (explaining that district courts have jurisdiction to enjoin a change to the status quo pending completion of mandatory bargaining and mediation procedures of RLA). But minor disputes must go directly to binding arbitration, typically conducted by the National Railroad Adjustment Board. See *Conrail*, 491 U.S. at 303–04.

When a railroad labor dispute reaches a federal court, our central responsibility is "that of taxonomist"—classifying the dispute as major or minor. *Brotherhood 2017*, 879 F.3d at 757. Given the RLA's strong preference for arbitration, a railroad bears a "relatively light burden" in persuading the court that its action is pursuant to existing contractual authority and thus a minor dispute under the RLA. *Conrail*, 491 U.S. at 307 (internal citation omitted). "If the railroad can articulate an argument that is 'neither obviously insubstantial or frivolous, nor made in bad faith,' the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go

forward." *Brotherhood 2017,* 879 F.3d at 758 (quoting *Conrail,* 491 U.S. at 310). Plain and simple, "in making the choice between major and minor, there is a large thumb on the scale in favor of minor, and hence arbitration." *Id.*

This legal framework is well-established and known to railroads and unions alike. The Supreme Court has outlined the exact contours of a court's role in labor disputes under the RLA, and our court has had many opportunities to apply these principles. See, *e.g., Conrail,* 491 U.S. 299; *Burley,* 325 U.S. 711; *Brotherhood 2017,* 879 F.3d 754; *Railway Labor Executives Ass'n 1987,* 833 F.2d 700.

B

Like the district court, we see no way to distinguish this case from the principles that guided the Supreme Court in *Conrail* or our court in *Railway Labor Executives Ass'n 1987* and *Brotherhood 2017.* Straightforward application of this precedent leads to but one conclusion: the position Union Pacific advanced in the district court—that a consistent practice of unilaterally modifying its attendance policy reflects its authority to do so as an implied term of its collective bargaining agreements with employees—is neither obviously insubstantial nor frivolous. That conclusion has the consequence of rendering the Brotherhood's challenge to the attendance policy changes a minor dispute subject to resolution through mandatory arbitration, not litigation in federal court.

The links in our chain of reasoning follow directly from the Supreme Court's instruction in *Conrail.* Start by recognizing that Union Pacific and the employees represented by the Brotherhood are parties to many different bargaining agreements. Some agreements are company-wide in scope while

others cover only geographic segments of employees absorbed into Union Pacific by consolidation in the railroad industry. All agree that no particular contracts expressly authorize Union Pacific to unilaterally modify its attendance policy. The Brotherhood sees that as the beginning and end of the inquiry. Far from it.

A collective bargaining agreement, the Supreme Court emphasized in *Conrail*, is a "generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." 491 U.S. at 311–12 (internal citation omitted). These agreements may also include implied terms, defined by "the parties' practice, usage, and custom as they carry out their agreement." *Brotherhood 2017*, 879 F.3d at 758. We have underscored this same reality, emphasizing that "any well established practices that constitute a 'course of dealing' between the carrier and employees" form part of the agreement the same as do any specific terms set out in the text of the agreement. *Railway Labor Executives Ass'n 1987*, 833 F.2d at 705 (internal citation omitted).

It is undisputed that Union Pacific has unilaterally imposed changes in attendance policy for at least the past 22 years. In 1998 the company launched a system-wide attendance policy for locomotive engineers known as the Union Pacific TE&Y Attendance Policy. This change was not bargained for with the Brotherhood. Union Pacific unilaterally modified that policy in 1999. It did so again in 2004, 2006, 2011, 2015, 2017, and 2018—all without going to the bargaining table.

The point of this tally is not to cement the number of times a railroad must act to establish a course of dealing. But this history does show a pattern, and that pattern, in turn, establishes beyond dispute that Union Pacific stood on solid

ground in considering the Brotherhood's challenge to the attendance policy modifications to reflect a minor dispute—a challenge to the company's exercise of authority implied and established as part of existing collective bargaining agreements through the parties' course of dealing. The district court saw this as plain as day, dismissed the Brotherhood's claim, and directed the union to resolve its difference with Union Pacific through arbitration. We agree on all points.

Recognize what we are not deciding. We are not resolving the merits of the Brotherhood's challenge to Union Pacific's changes to its attendance policy. "Wading through the competing declarations to determine the actual authority the Railroad had to modify the disciplinary policies, based on past practices, is a job for the arbitrator." *Brotherhood 2017*, 879 F.3d at 759. Our conclusion is more limited: Union Pacific has made a reasonable argument—all the law requires—that the 2020 change in attendance policy is consistent with its authority under its many collective bargaining agreements, which include implied terms developed from a consistent pattern of practice.

In pressing a contrary contention, the Brotherhood ignored the clear principles outlined in *Conrail* and *Railway Labor Executives Ass'n 1987*. The Brotherhood reads those decisions as turning entirely on technical factual distinctions. Not so and not by a long shot. We made that clear in 2017, when we rejected the Brotherhood's attempt to turn a minor dispute over changes Union Pacific made to a disciplinary policy into a major dispute. See *Brotherhood 2017*, 879 F.3d 754. And unfortunately again here we find ourselves needing to remind the Brotherhood of a legal principle settled beyond debate in the law: "[T]he relevant terms of an agreement are not only

those that are written down; they also include the parties' practice, usage, and custom as they carry out their agreement." *Brotherhood 2017*, 879 F.3d at 758; see also *Conrail*, 491 U.S. at 311–12.

Union Pacific only had to advance a nonfrivolous argument that such past practice and course of dealing conferred authority on the company to modify its attendance policy without renewed negotiation. It did so and that ends the Brotherhood's appeal.

## III

That brings us to Union Pacific's request for sanctions under Rule 38 of the Federal Rules of Appellate Procedure. And here, too, the proper resolution is clear, for the Brotherhood's appeal is frivolous by a wide mark.

An appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit." *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017). But "even when an appeal is frivolous, whether to impose sanctions under Rule 38 is a discretionary determination." *Quincy Bioscience, LLC v. Ellishbooks*, 961 F.3d 938, 941 (7th Cir. 2020).

The Brotherhood is no stranger to these principles. As we noted just three years ago—in sanctioning some of the same Brotherhood regional branches before us here—"when federal jurisdiction is limited to narrow grounds, when the arguments on those grounds are implausible, and when the appellant spends much of his time attempting to circumvent those grounds, sanctions are appropriate." *Brotherhood of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 545 (7th Cir. 2018). This is such a case.

The Brotherhood's claims, as we have explained, are entirely foreclosed by precedent. There is no way to read the Supreme Court's decision in *Conrail* and our opinions in *Railway Labor Executives Ass'n 1987* and *Brotherhood 2017* and conclude anything other than that the district court got this 100% right in finding the Brotherhood's challenge to Union Pacific's modified attendance policy to be a minor dispute requiring resolution by arbitration, not litigation in federal court. The Brotherhood begs to differ only by reading those cases in such granular detail—as so entirely limited by their exact facts—as to empty the word precedent of any meaning. Microscopic hair-splitting resulted in the Brotherhood advancing positions that sound in nothing more than distinctions without differences. When we pointed some of this out during oral argument, the Brotherhood's counsel only dug in further. This we cannot accept.

The Brotherhood could have easily avoided today's outcome. It could have acknowledged that its position was foreclosed, urged us to reconsider our prior precedents by sitting *en banc*, and relatedly explained that it likewise intended to file a petition inviting the Supreme Court to revisit *Conrail* and related cases.

We AFFIRM the district court and award sanctions. Union Pacific shall provide a schedule of its costs and attorneys' fees within 14 days.