In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-3134

AMERICAN ZURICH INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

SUN HOLDINGS, INC.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 23 C 1243 — **Matthew F. Kennelly**, *Judge.*

———————————

ARGUED MAY 24, 2024 — DECIDED JUNE 3, 2024

———————————

Before EASTERBROOK, KIRSCH, and LEE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Sun Holdings purchased a workers'-compensation policy from American Zurich Insurance. The policy made American Zurich responsible for paying all approved claims in full. It also required Sun to reimburse American Zurich for the first $250,000 of each claim. American Zurich kept its part of this arrangement, but Sun did not. When Sun received bills, it ignored them. Sun didn't explain or try to justify nonpayment.

American Zurich invoked the policy's dispute-resolution clause, which calls for arbitration in Illinois under the substantive law of New York and the commercial rules of the American Arbitration Association. During the arbitration, Sun offered one feeble excuse after another; as soon as each had been dispatched, Sun presented a new one. The arbitrators deemed this whac-a-mole approach to be a waste of everyone's time. They ordered Sun to pay what American Zurich claimed (approximately $1.1 million plus 9% interest from the time each bill had been due) and added almost $175,000 in attorneys' fees as a sanction for defending frivolously.

True to form, Sun did not pay. American Zurich applied to a federal district court for enforcement. (Jurisdiction comes from 28 U.S.C. §1332.) No longer contesting its duty to pay the bills (plus interest), Sun argued that the arbitrators had exceeded their authority by directing it to pay the insurer's legal fees. Sun relied on two sentences in the contract. One says: "Each party shall pay its own costs of counsel and witnesses." The other reads: "The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement." According to Sun, the $175,000 sanction produces damages in excess of the compensatory amount and violates the rule that each side bears its own attorneys' fees. The district court disagreed and ordered Sun to pay the award in full. 2023 U.S. Dist. LEXIS 177969 (N.D. Ill. Oct. 3, 2023).

Sun seems to think that the $175,000 is a form of punitive damages, but it is not. This is a compensatory award, designed to put American Zurich in the position it would have occupied had Sun refrained from frivolous tactics. The contract allows compensatory awards. As for the rule that each

party bears its legal fees: the arbitrators found this to be a re-statement of the American Rule on legal fees, under which each side pays its own lawyers. But the American Rule is not understood to forbid sanctions for frivolous litigation. Both New York law, see *ReliaStar Life Insurance Co. v. EMC National Life Co.*, 564 F.3d 81, 86–89 (2d Cir. 2009) (New York law), and the AAA's rules, see Rule 49(d)(ii), allow awards of legal fees as sanctions even when the American Rule governs.

According to Sun, the statement that "[e]ach party shall pay its own costs of counsel and witnesses" is broader than the American Rule and prohibits all sanctions measured by the adversary's legal expenses—though on this view the arbitrators would have had the authority to levy a sanction using some other yardstick. Perhaps so—but the word "perhaps" is vital. An arbitration clause delegates interpretive power to the arbitrators. We do not ask whether they read the contractual language *correctly*; it is enough that they tried to apply the contract that the parties signed. We put it this way in one opinion that has been quoted and re-quoted in the intervening years:

> As we have said too many times to want to repeat again, the ques-tion for decision by a federal court asked to set aside an arbitration award … is not whether the arbitrator or arbitrators erred in in-terpreting the contract; it is not whether they clearly erred in in-terpreting the contract; it is not whether they grossly erred in in-terpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive. By making a contract with an arbitration clause the parties agree to be bound by the ar-bitrators' interpretation of the contract. A party can complain if the arbitrators don't interpret the contract—that is, if they disre-gard the contract and implement their own notions of what is rea-sonable or fair. A party can complain if the arbitrators' decision is infected by fraud or other corruption, or if it orders an illegal act. But a party will not be heard to complain merely because the

arbitrators' interpretation is a misinterpretation. Granted, the grosser the apparent misinterpretation, the likelier it is that the arbitrators weren't interpreting the contract at all. But once the court is satisfied that they were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrators haven't ordered anyone to do an illegal act.

*Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987) (citations omitted). The Supreme Court has said the same thing. See, e.g., *Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 509–10 (2001); *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 571–73 (2013).

Like the district court, we are satisfied that the arbitrators interpreted this contract when they concluded that its reference to legal fees did no more than adopt the American Rule. Whether the arbitrators were right or wrong is none of our business.

Sun has followed up a frivolous defense during the arbitration with a frivolous strategy in court. Instead of acknowledging *Hill* and similar decisions, Sun proceeds as if the only possible meaning of the contract is the one it espouses. Sun wants us to ignore the fact that the arbitrators took the language seriously and interpreted it in a way different from the reading Sun prefers. And, as if to highlight the fact that it disdains the limits on judicial review of arbitral awards, Sun wants us to reexamine the arbitrators' conclusion that it engaged in frivolous conduct (it was "just putting on a defense," Sun insists) and wants us to say that the arbitrators overestimated the amount of excess fees that American Zurich was compelled to incur. These arguments are unrelated to contractual meaning. They are unabashed requests to contradict the arbitrators' findings, something the Federal Arbitration Act forbids. See 9 U.S.C. §9. (Sections 10 and 11 give conditions

under which a court will not enforce an award, but neither of these sections allows a federal court to disagree with arbitrators' findings of fact or legal conclusions. Section 11(a) allows review of "an evident material miscalculation of figures", but Sun does not maintain that the arbitrators got their sums wrong.)

*Hill* and many other decisions in this circuit hold that woebegone contests to arbitrators' awards are sanctionable. "Anything less makes a mockery of arbitration's promise to expedite and cut the costs of resolving disputes." *Production & Maintenance Employees' Union v. Roadmaster Corp.*, 916 F.2d 1161, 1163 (7th Cir. 1990). Arbitration cannot expedite and reduce the cost of dispute resolution if the parties must litigate once before the arbitrators and again in court. We therefore give Sun 14 days to show cause why sanctions, including but not limited to an award of attorneys' fees, should not be imposed for this frivolous appeal. See Fed. R. App. P. 38.

AFFIRMED; ORDER TO SHOW CAUSE ISSUED