In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1701

CAROLINE T. RETZIOS,

*Plaintiff-Appellant,*

*v.*

EPIC SYSTEMS CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 23-cv-03338 — **Jeremy C. Daniel**, *Judge.*

ARGUED DECEMBER 11, 2024 — DECIDED JANUARY 24, 2025

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Epic Systems fired Caroline
Retzios after she refused to be vaccinated against COVID-19.
She filed this suit under Title VII of the Civil Rights Act of
1964, asserting that the statute required Epic to accommodate
her religious objection to vaccination. 42 U.S.C. §§ 2000e(j),
2000e–2(a)(1). Epic asked the district court to send the dispute
to arbitration, which it did. The judge then dismissed the suit,

producing an appealable order. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000).

The district judge should not have dismissed this suit. The Federal Arbitration Act calls for a suit referred to arbitration to be stayed rather than dismissed, when a party requests a stay (as Epic did). 9 U.S.C. §3; *Smith v. Spizzirri*, 601 U.S. 472 (2024); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). Had the court entered a stay, that order would not have been appealable. 9 U.S.C. §16(b)(1). But appellate jurisdiction depends on what the district court did, rather than what it should have done, so we must proceed.

In 2020, when accepting an award of stock, Retzios agreed to arbitrate with Epic "any statutory or common law legal claims … that relate to or arise out of my employment or the termination of my employment." The district judge thought that Retzios's claim fits this language—which it does. Her objection to vaccination as a condition of employment relates to that employment, and her objection to being fired arises out of that employment's termination.

Her arguments to the contrary disregard the contractual language. She contends, for example, that the agreement does not mention COVID-19 or vaccination. Indeed not, but why should it? This clause covers *any* statutory or common law claim that relates to her employment. It is unnecessary to supply a list (which inevitably would be incomplete) of potential disputes that might come within the word "any". Retzios is free to present to the arbitrator her contention that Epic should not have fired her. A promise to arbitrate is a forum-selection agreement. See, e.g., *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). A litigant's belief in the

rightness of her substantive position does not change the agreed forum.

Retzios also contends that the agreement is "illusry" [sic] and unenforceable. We don't get it. Retzios received at least two kinds of compensation in exchange for the promise to arbitrate: the stock and her ongoing salary. Contracts supported by consideration are enforceable under Wisconsin's law (which this contract specifies).

According to Retzios, promissory estoppel forbids enforcement of the agreement. We don't get this either. Promissory estoppel is a doctrine that applies in the absence of a written contract when one party detrimentally relies on a concrete promise made by the other. See *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683 (1965). But Retzios and Epic have a written contract. Retzios also does not point to any formal (but non-contractual) promise on which she detrimentally relied. She says instead that the COVID-19 pandemic was unpredictable, which may be true but has nothing to do with promissory estoppel.

Finally, Retzios insists that Epic waived its right to arbitrate when it did not ask state unemployment-insurance officials or the EEOC to dismiss their proceedings. She does not cite any statute or judicial decision for the proposition that arbitration can be waived by participating in administrative proceedings. Indeed, Epic and Retzios agreed that requests for unemployment compensation or review by any agency are outside the scope of arbitration. (The agreement says in Part IV: "Covered Claims … do not include claims for workers' compensation or unemployment compensation. … I am not barred from filing a claim or charge with a governmental administrative agency".)

The doctrine of waiver addresses conduct in litigation, see *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)—after all, 9 U.S.C. §3 applies only in court—and Epic invoked the arbitration agreement as soon as Retzios filed her complaint. Events during this suit do not offer a smidgen of support for waiver.

The arguments that Retzios presented to the district court, and repeated in this court even after the district judge explained why they are wrong, are uniformly frivolous. Epic filed a motion for sanctions under Fed. R. App. P. 38, to which Retzios responded by repeating the arguments we have already addressed.

Many decisions in this circuit award sanctions when litigants present objectively groundless objections to arbitration—either before the arbitrator has a crack at the dispute, or when the loser tries to upset the award. See, e.g., *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192 (7th Cir. 1987); *Production & Maintenance Employees v. Roadmaster Corp.*, 916 F.2d 1161 (7th Cir. 1990); *BLET GCA UP v. Union Pacific R.R.*, 988 F.3d 409 (7th Cir. 2021); *American Zurich Insurance Co. v. Sun Holdings, Inc.*, 103 F.4th 475 (7th Cir. 2024). The reason is simple: arbitration is designed to simplify and expedite the process of dispute resolution. It cannot serve that purpose if one party to the agreement resists tooth and nail. When that happens, the arbitration clause *exacerbates* the conflict: instead of one suit in court, we get one suit in court (about whether to arbitrate), a second controversy before the arbitrator, and potentially a third in court when the loser tries to get a judge to override the outcome or forces the winner to file suit seeking the award's enforcement. Turning one dispute-resolution process into two or three makes arbitration its own enemy.

The American Rule on the allocation of legal fees presumptively requires both sides to pay their own legal expenses. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975). A premise of the American Rule, however, is that there will be just one encounter in the trial court, followed by one appeal. People who agree to arbitrate may seek to reduce the cost of the trial and eliminate the expense of the appeal. But when one side insists on litigating and appealing *before* arbitration, then pursuing an arbitration, and potentially litigating and appealing *after* arbitration, legal costs go up and the one-suit premise of the American Rule is defeated. As we put it in *Roadmaster*, 916 F.2d at 1163: "Arbitration will not work if legal contests are its bookends: a suit to compel or prevent arbitration, the arbitration itself, and a suit to enforce or set aside the award. Arbitration then becomes more costly than litigation". This circuit's decisions awarding sanctions for dogged, objectively unreasonable opposition are designed to prevent that from happening.

Retzios and Epic bore their own legal costs in the district court. They will bear their own costs again if Retzios pursues arbitration. If Retzios prevails, Title VII will expose Epic to an award of legal fees. 42 U.S.C. §2000e–5(k). Requiring Epic also to bear the legal costs of this unnecessary, nay pointless, appeal would be inappropriate. We therefore grant Epic's motion for sanctions and direct Retzios to reimburse Epic for the legal expenses it has incurred on appeal. Epic has 14 days to file a statement of these expenses, and Retzios will have 14 days to respond.

AFFIRMED, WITH SANCTIONS